UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | | |
|---|---|---|
| IRIS LAVERDIERE, | ) | |
| | ) | |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| MICHAEL BALCOM Sr., in his | ) | |
| Personal and Professional Capacity as | ) | |
| a Corrections Officer of the | ) | |
| Department of Corrections, | ) | CIVIL ACTION DOCKET NO:_____ |
| | ) | |
| and | ) | COMPLAINT AND JURY TRIAL |
| | ) | DEMAND |
| AMANDA WOOLFORD, in her Personal | ) | |
| and Professional Capacity as a | ) | |
| Director of Female Services, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| DR. JOSEPH FITZPATRICK, in his | ) | |
| Personal and Professional Capacity as | ) | |
| Commissioner of the Maine | ) | |
| Department of Corrections, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| SCOTT LANDRY, in his Personal and | ) | |
| Professional Capacity as Warden, | ) | |
| Maine Correctional Center, Windham, | ) | |
| Maine, | ) | |
| | ) | |
| And | ) | |
| | ) | |
| John Doe Defendants, in their | ) | |
| Personal and Professional Capacity as | ) | |
| Corrections Officers, | ) | |
| | ) | |
| Defendants | ) | |

**COMPLAINT**
**(WITH DEMAND FOR JURY TRIAL)**

NOW COMES the Plaintiff, Iris LaVerdiere, by and through Undersigned Counsel and complains against the above-named Defendants as follows:

### Jury Demand

1.    The Plaintiff demand a jury trial.


### Introduction

2.    This is a civil rights action for damages under 42 U. S. C. § 1983 against Dr. Joseph Fitzpatrick, Warden Scott Landry, Director Amanda Woolford, and Michael Balcom, Sr., in their personal and professional capacities, and against unknown guards, referred to herein as John Doe Defendants.

3.    In addition, the Plaintiff complains against Michael Balcom, Sr. for assault and against all Defendants for intentional infliction of emotional distress.

4.    The Plaintiff also complains against the Defendant for violations of her State Constitutional rights, as well as a statutory violation of 34-A M.R.S. § 3031(6).

5.    The Plaintiff is seeking punitive damages.

## Jurisdiction and Venue

6.     This action is brought pursuant to 42 U.S. C. § 1983 and jurisdiction in the Court is proper under 28 U.S.C. § 1331.   Supplemental jurisdiction over state law tort claims is proper under 28 U.S.C. § 1367.

7.     In addition, as the Plaintiff and Defendants are citizens of different states, and the amount in controversy exceeds seventy-five ($75,000) thousand dollars, this Court also has diversity jurisdiction under 28 U.S.C. § 1332.

8.  Venue is proper in the Court pursuant to 28 U.S.C. § 1391(b).

## Parties

9.     The Plaintiff Iris LaVerdiere (hereinafter "LaVerdiere" is a citizen of Cape Coral, Florida.

10.    The Maine Correctional Center (hereinafter "MCC") is a correctional facility located in the Town of Windham, County of Cumberland, State of Maine.

11.    Upon information and belief, at all times relevant to this Complaint, Defendant Michael Balcom, Sr., (hereinafter "Balcom"), an individual, was a corrections officer employed at MCC, and acting under color of law.

12.    In that capacity, Defendant Balcom had oversight and control of Plaintiff LaVerdiere while she was incarcerated at MCC.

13.    Defendant Balcom is sued in his personal and professional capacity.

14.    Upon information and belief, Defendant Balcom is a resident of the Town of South Paris, County of Oxford, State of Maine.

15.    Upon information and belief, at all times relevant to this Complaint, the Defendant Dr. Joseph Fitzpatrick ("hereinafter Fitzpatrick"), an individual, was duly appointed and acting under color of law in his capacity as the Commissioner of the State of Maine Department of Corrections.

16.    In that capacity, Defendant Fitzpatrick had oversight and control of all State of Maine correctional facilities, employees, and inmates, including those at the MCC.

17.    Defendant Fitzpatrick is sued in his personal and professional capacity.

18.    Upon information and belief, at all times relevant to this Complaint, Defendant Scott Landry (hereinafter "Landry"), an individual, was duly appointed and acting under color of law in his capacity as the Warden of the MCC.

19.    In that capacity, Defendant Landry had oversight and control of all correctional facilities, employees, and inmates of the Maine Correctional Center, including the MCC.

20.    Defendant Landry is sued in his personal and professional capacity.

21.     Upon information and belief, at all times relevant to this Complaint, the Defendant Amanda Woolford (hereinafter "Woolford"), an individual, was acting under color of law in her capacity as the Director of Female Services at the MCC.

22.     In that capacity, Defendant Woolford had oversight and control of facilities, employees, and inmates housed in B-Pod at the MCC.

23.     Defendant Woolford is sued in her personal and professional capacity.

24.     Upon information and belief, at all times relevant to this Complaint, John Doe Defendants, individuals, were acting under color of law in their capacity as corrections officers at the MCC.

25.     In that capacity, John Doe Defendants had oversight and control of Plaintiff LaVerdiere.

26.     John Doe Defendants are sued in their personal and professional capacities.

27.     Upon information and belief, Defendants Fitzpatrick, Landry, Woolford, and the John Doe Defendants are all residents of the State of Maine.

## **Statement of Facts**

28.     In the summer and fall of 2015, Plaintiff LaVerdiere was an inmate at the MCC, and housed in B-Pod North.

29.     At all times relevant to this complaint, Defendant Balcom was employed as a corrections officer and was assigned as a guard in B-Pod North.

30.    In this capacity, he had supervisory authority over Plaintiff LaVerdiere, which included the authority to take disciplinary action against her.

31.    Defendant Balcom began grooming Plaintiff LaVerdiere with the goal of sexually assaulting her.

32.    He first began conversing with Plaintiff LaVerdiere about his personal life.

33.    Defendant Balcom would share personal details about his children and his relationship with his wife.

34.    Defendant Balcom then would ask Plaintiff LaVerdiere personal questions about her family.

35.    These interactions made Plaintiff LaVerdiere uncomfortable, however she was afraid to take steps to report this behavior due to the risk of being subject to retaliation by Defendant Balcom and other employees at MCC.

36.    Defendant Balcom's predatory behavior quickly escalated.  He began looking at LaVerdiere in a sexually suggestive manner.

37.    Defendant Balcom made statements to Plaintiff LaVerdiere of a sexual nature, such as stating that he would think about LaVerdiere while having sexual relations with his wife.

38.    Defendant Balcom began providing Plaintiff LaVerdiere with special treatment.

39.    He would ensure that Plaintiff LaVerdiere could shower before the other inmates.

40.   He provided Plaintiff LaVerdiere extra razors for shaving and allowed her to keep those in her room.

41.   He provided Plaintiff LaVerdiere with extra blankets and comforts. He would allow LaVerdiere out of her room to make phone calls.

42.   All of these steps were taken in an effort to groom Plaintiff LaVerdiere for purposes of abusing her.

43.   Upon information and belief, John Doe Defendants were aware that Plaintiff LaVerdiere was receiving special treatment from Defendant Balcom.

44.   Defendant Balcom told Plaintiff LaVerdiere that he would be walking by her room, and demanded that she be in a state of undress when he arrived.

45.   The door into LaVerdiere's room had a window through which guards could view the inmate.

46.   Plaintiff LaVerdiere was forced to make the decision to either stand nude for Defendant Balcom's sexual gratification, or risk retaliation if she refused.

47.   Under compulsion, Plaintiff LaVerdiere submitted to these demands.

48.   Defendant Balcom's sexual aggressions continued to escalate.

49.   In September of 2015, he sexually assaulted Plaintiff LaVerdiere by digitally penetrating her while she was in her room.

50.     After the first sexual assault, Plaintiff LaVerdiere began sending urgent requests to Defendant Woolford requesting a meeting so that she could disclose the sexual abuse.

51.     These requests went unanswered by Woolford.

52.     Upon information and belief, Defendant Woolford had actual knowledge of the multitude of requests made by Plaintiff LaVerdiere to meet with her to discuss the ongoing sexual abuse.

53.     Plaintiff LaVerdiere then sent correspondence to Warden Scott Landry seeking his intervention.

54.     Plaintiff LaVerdiere further stated in this letter to Defendant Landry that she had reached out to numerous other employees, including Woolford, and complained that those requests for help had gone unanswered.

55.     Upon information and belief, Defendant Landry was made aware of the complaints filed by Plaintiff LaVerdiere and LaVerdiere's request to meet with him.

56.     Defendant Landry did not meet with Plaintiff LaVerdiere.

57.     Plaintiff LaVerdiere kept copies of these requests; however, upon information and belief, that evidence was destroyed by John Doe Defendants when her room was searched.

58.     Finally, a guard personally approached Defendant Woolford and informed her that Plaintiff LaVerdiere requested an urgent meeting.

59.    After sending multiple requests over the course of several weeks, Defendant Woolford finally met with Plaintiff LaVerdiere in late September or early October of 2015.

60.    However, the unreasonable delay by Defendant Woolford allowed Defendant Balcom the opportunity to continue to sexually assault Plaintiff LaVerdiere.

61.    Between the time that Plaintiff LaVerdiere made her first report and the meeting with Defendant Woolford, Balcom sexually assaulted LaVerdiere multiple times.

62.    The assaults included digitally penetrating Plaintiff LaVerdiere and groping her.

63.    Plaintiff LaVerdiere disclosed the sexual assault to Defendant Woolford, who promised that LaVerdiere would not be subject to disciplinary action for making the report.

64.    LaVerdiere was moved to B-Pod South following this disclosure.

65.    Upon information and belief, Defendants Fitzpatrick and Landry were made aware of the sexual abuse following the report to Woolford.

66.    Upon information and belief, an investigation was commenced following Plaintiff LaVerdiere's disclosure of the abuse to Defendant Woolford.

67.    Upon information and belief, multiple female inmates at MCC have been subjected to sexual assaults by guards in the last ten (10) years.

68.    Upon information and belief, Defendants Fitzpatrick, Landry, and Woolford had actual knowledge of these sexual assaults prior to Defendant Balcom's sexual assaults upon Plaintiff LaVerdiere.

69.    Upon information and belief, Defendant's Fitzpatrick, Landry, and Woolford had the authority to suspend Defendant Balcom, or otherwise restrict his access to inmates during the investigation.

70.    Upon information and belief, Defendant's Fitzpatrick, Landry, and Woolford allowed Defendant Balcom to continue to work as a guard in B-Pod pending the investigation.

71.    Upon information and belief, shortly after Plaintiff LaVerdiere spoke with Defendant Woolford, LaVerdiere became the target of retaliatory actions by John Doe Defendants.

72.    John Doe Defendants began to act with hostility toward LaVerdiere.

73.    Plaintiff LaVerdiere's mail was confiscated.

74.    Plaintiff LaVerdiere was denied phone access, contrary to MCC policy.

10

75.     Plaintiff LaVerdiere's commissary was removed from her room, contrary to MCC policy.

76.     Plaintiff LaVerdiere was threatened with being placed in solitary confinement when she complained about the abusive treatment.

77.     Plaintiff LaVerdiere requested to use the phone to contact an attorney, but she was not allowed to do so, contrary to MCC policy.

78.     Plaintiff LaVerdiere was denied medical treatment for lice for four days, while other inmates were provided with treatment immediately following the outbreak.

79.     Upon information and belief, these actions were taken against Plaintiff LaVerdiere as retaliation for reporting Defendant Balcom's sexual abuse.

80.     Eventually Plaintiff LaVerdiere was placed in solitary confinement for four days without a shower and without meaningful human contact.

81.     Upon information and belief, these actions were taken by John Doe Defendants to punish Plaintiff LaVerdiere for reporting the sexual abuse.

82.     In addition, although Defendant Balcom was not assigned to B-Pod South, Balcom was allowed access to this unit where he continued to assault Plaintiff LaVerdiere.

83.    Defendant Balcom would send notes to LaVerdiere and provide her with laundry.

84.    On several occasions while Plaintiff LaVerdiere was housed in B-Pod South, Defendant Balcom was allowed access to Plaintiff LaVerdiere and demanded that she removed her clothes and masturbate for him.

85.    Under the threat of further retaliation, Plaintiff LaVerdiere submitted to his demands.

86.    Upon information and belief, John Doe Defendants were aware that Defendant Balcom was being investigated for sexually assaulting Plaintiff LaVerdiere, and failed to take steps to protect her from further abuse.

87.    The rooms in which Plaintiff LaVerdiere was housed during her incarceration had a window through which guards could view the Plaintiff undress or using the toilet.

88.    Upon information and belief, on several occasions guards would purposefully view the Plaintiff in a state of undress or while using the toilet.

89.    There was no legitimate purpose served by observing the Plaintiff under those conditions, except to intimidate her and violate her Constitutional rights.

90.    Plaintiff LaVerdiere would place envelopes over the window while she would undress or use the toilet.

91.    Upon information and belief, Defendants Fitzpatrick, Landry, and Woolford instituted a policy that prohibited the Plaintiff from blocking the window while undressing or using the toilet.

92.    When the Plaintiff continued to cover the window so that guards could not observe her undressing or while using the toilet, the Plaintiff was subjected to disciplinary action.

93.    On December 24, 2015, Plaintiff LaVerdiere was released from incarceration.

94.    Plaintiff LaVerdiere sought mental health treatment immediately to help her cope with the abuse she suffered while incarcerated.

95.    As a result of the sexual abuse and abhorrent treatment she faced as a result of these acts of retaliation, Plaintiff LaVerdiere has suffered significant psychological trauma, physical injury, and pain and suffering.

96.    Plaintiff LaVerdiere has sought and receives mental health treatment to help treat her injuries suffered as a result of Defendant's conduct.

97.    Plaintiff LaVerdiere has incurred significant expense related to treatment directly caused by the abuse she suffered at the MCC.

98.    Plaintiff LaVerdiere suffers physical pain as a result of the abuse, including migraine headaches, ulcers, and nausea.

99.   Plaintiff LaVerdiere is seeking damages in excess of seventy-Five Thousand ($75,000.00) Dollars for compensatory and punitive damages.

100.   Defendant Balcom pled guilty to one count of Unlawful Sexual Contact based on his conduct and was incarcerated.

### Count 1: Violation of Constitutional Rights under 42 U.S.C. § 1983 *et seq*, -  as to Michael Balcom and John Doe Defendants

101.   The Plaintiff repeats and realleges each and every allegation made in paragraphs 1-100 as if set forth herein.

102.   Upon information and belief, Defendant Balcom did sexually assault Plaintiff LaVerdiere on multiple occasions.

103.   Upon information and belief, Defendant Balcom compelled the Plaintiff to perform sexual acts upon herself.

104.   Upon information and belief, Defendant Balcom compelled the Plaintiff to stand naked for his sexual gratification.

105.   Upon information and belief, Defendant Balcom subjected the Plaintiff to humiliating and degrading treatment and emotional abuse.

106.   Upon information and belief, John Doe Defendants helped to facilitate Defendant Balcom's access to the Plaintiff after she was moved to B-Pod South, knowing that Defendant Balcom intended to sexually abuse the Plaintiff.

107.   Upon information and belief, Defendant Balcom and the John Doe Defendants retaliated against Plaintiff LaVerdiere for reporting Defendant Balcom's misconduct.

108.   Upon information and belief, evidence of reports made by Plaintiff LaVerdiere to MCC officials were confiscated and destroyed by John Doe Defendants to prevent MCC officials for being held accountable for the abuse suffered by Plaintiff LaVerdiere.

109.   Upon information and belief, John Doe defendant's denied Plaintiff LaVerdiere medical treatment for lice as retaliation for the Plaintiff's reporting of Defendant Balcom's sexual assaults to prison officials and in an effort to discourage her from maintaining the complaint.

110.   Upon information and belief, John Doe Defendants placed Plaintiff LaVerdiere in solitary confinement, contrary to policies set forth by the DOC.

111.   Upon information and belief, John Doe Defendants seized Plaintiff LaVerdiere's mail without lawful justification to prevent her reporting of the abuse and to retaliate against her for reporting the misconduct.

112.   Upon information and belief, John Doe Defendants prevented Plaintiff LaVerdiere from contacting an attorney, contrary to DOC policy and her Constitutional rights.

113.   Upon information and belief, John Doe Defendants purposely viewed her while undressing and using the toilet for purposes of sexual gratification and to discourage the Plaintiff from maintaining her complaint against Defendant Balcom.

114.   Upon information and belief, at all times material to this complaint, John Doe Defendants in their personal and professional capacity, while acting under the color of law, did conspire, act in concern, or agreed to act in a manner that deprived Plaintiff LaVerdiere of her Constitutional rights.

115.   Said conduct by Defendant Balcom and John Doe Defendants caused Plaintiff LaVerdiere to suffer cruel and unusual punishment, violated her right to be free from unreasonable searches and seizures, violated her right to due process, violated her right to adequate medical attention, and violated other rights and privileges, all of which are guaranteed under the United States Constitution.

116.   Defendant Balcom and John Doe Defendants had actual knowledge that their conduct would violate Plaintiff LaVerdiere's Constitutional rights and were deliberately indifferent to that risk.

117.   The actions of Defendant Balcom and the John Doe Defendants are the direct and proximate cause of physical and psychological injuries suffered by Plaintiff LaVerdiere.


WHEREFORE the Plaintiff prays that this Honorable Court grant judgment in favor of the Plaintiff and against the Defendants and award the Plaintiff the following relief:

      a. An amount of damages deemed reasonable by the trier of fact sufficient to compensate Plaintiff;

b. Punitive Damages in an amount sufficient to punish and deter the Defendants in the future from engaging in this form of malicious conduct; and award prejudgment interest from the earliest date allowable by law at the highest rate allowable by law;

c. Costs and expenses to the extent allowable by law.  *See* 42 U.S. C. § 1988;

d. Further relief as this Court deems just and proper.

## Count 2:
### Violation of Constitutional Rights under 42 U.S.C. § 1983 *et seq* - as to Defendants Fitzpatrick, Landry, and Woolford.

118.  The Plaintiff repeats and realleges each and every allegation made in paragraphs 1-117 as if set forth herein.

119.  Upon information and belief, at all times material to this complaint, Defendants Fitzpatrick, Landry, and Woolford were responsible for establishing and implementing appropriate standards, policies, procedures, customs, and practices designed to recognize and protect prisoners from violations of their Constitutional rights by guards.

120.  Upon information and belief, multiple female inmates at MCC have been subjected to sexual assaults by guards in the last ten (10) years.

121.  Upon information and belief, at all times material to this complaint, Defendants Fitzpatrick, Landry, and Woolford had knowledge of these sexual assaults.

122. Upon information and belief, at all times material to this Complaint, Defendants Fitzpatrick, Landry, and Woolford had knowledge that female inmates are particularly vulnerable to sexual assaults perpetrated by guards.

123. Upon information and belief, at all times material to this Complaint, Defendants Fitzpatrick, Landry, and Woolford were aware that many female inmates, including the Plaintiff, have a past history of trauma that makes them particularly vulnerable to repeated victimization.

124. Upon information and belief, the security cameras at MCC located in the hallway outside of Plaintiff LaVerdiere's room were not operable during the time that Plaintiff was subjected to sexual abuse and other Constitutional violations by Defendant Balcom and the John Doe Defendants.

125. Upon information and belief, at all times material to this Complaint, Defendants Fitzpatrick, Landry, and Woolford had actual knowledge that said security systems were not operational.

126. Upon information and belief, at all times material to this Complaint, Defendants Fitzpatrick, Landry, and Woolford did not require corrections officers to wear body cameras while working one-on-one with the inmates.

127. Upon information and belief, at all times material to this Complaint, Defendants Fitzpatrick, Landry, and Woolford allowed guards to have unsupervised one-on-one contact with inmates.

18

128. Upon information and belief, at all times material to this Complaint, Defendants Fitzpatrick, Landry, and Woolford allowed guards under investigation for sexual abuse continued unsupervised access to inmates.

129. Upon information and belief, Defendants Fitzpatrick, Landry, and Woolford allowed Defendant Balcom continued physical access to Plaintiff LaVerdiere even after she reported the sexual abuse.

130. Upon information and belief, at all times material to this Complaint, Defendants Fitzpatrick, Landry, and Woolford operated MCC under policies, procedures, customs, and practices in a manner that exhibited deliberate indifference to the substantial risk that their conduct would violate Plaintiff LaVerdiere's Constitutional rights.

131. Upon information and belief, at all times material to this Complaint, Defendants Fitzpatrick, Landry, and Woolford are required to comply with policies for prisoner discipline set forth in 03-201 CMR Ch. 20, as established by the Department of Corrections.

132. Upon information and belief, at all times material to this Complaint, Defendants Fitzpatrick, Landry, and Woolford are required to comply with 34-A M.R.S. 3031, which guarantees all inmates the right to be free from physical and psychological abuse, and the right to medical care.

133. Upon information and belief, at all times material to the Complaint, Defendants Fitzpatrick, Landry, and Woolford failed to comply with policies, procedures, customs and practices mandated by law.

134.   Said conduct by the Defendants caused Plaintiff LaVerdiere to suffer cruel and unusual punishment, violated her right to be free from unreasonable searches and seizures, violated her right to due process, and violated her right to adequate medical attention, all of which are guaranteed under the United States Constitution.

135.   At all times material to this complaint, the conduct of Defendants Fitzpatrick, Landry, and Woolford manifested a deliberate indifference to the risk that their actions or inactions would result in a violation of the Constitutional rights of Plaintiff LaVerdiere.

136.   The actions of Defendant Fitzpatrick, Landry, and Woolford are the direct and proximate cause of physical and psychological injuries suffered by LaVerdiere.


WHEREFORE the Plaintiff prays that this Honorable Court grant judgment in favor of the Plaintiff and against the Defendants and award the Plaintiff the following relief:

a. An amount of damages deemed reasonable by the trier of fact sufficient to compensate Plaintiff;

b. Punitive Damages in an amount sufficient to punish and deter the Defendants in the future from engaging in this form of malicious conduct; and award prejudgment interest from the earliest date allowable by law at the highest rate allowable by law;

   c.  Costs and expenses to the extent allowable by law.  *See* 42 U.S.

      C. § 1988;

   d.  Further relief as this Court deems just and proper.

**Count 3:**
**Violation of 34-A M.R.S. § 3031 and Federal and State Constitutional**
**Rights - as to All Defendants**

137.  The Plaintiff repeats and realleges each and every allegation made in paragraphs 1-136 as if set forth herein.

138.  34-A M.R.S.A. § 3031(6) is a State Statute that guarantees that "any person residing in a correctional or detention facility has a right to protection against any physical or psychological abuse."

139.  As a result of this statutory right, the Plaintiff is also vested with a guarantee of due process pursuant to the United States Constitution and the Constitution of the State of Maine to be free from physical or psychological abuse.

140.  The conduct of all the Defendants violated Plaintiff LaVerdiere's rights under 34-A M.R.S. § 3031 (6).

141.  The Defendants acted with deliberate indifference to the substantial risk that their conduct would violate the Plaintiffs statutory and Constitutional rights.

142.  The actions of all Defendants are the direct and proximate cause of physical and psychological injuries suffered by LaVerdiere.

WHEREFORE the Plaintiff prays that this Honorable Court grant judgment in favor of the Plaintiff and against the Defendants and award the Plaintiff the following relief:

      a. An amount of damages deemed reasonable by the trier of fact sufficient to compensate Plaintiff;

      b. Punitive Damages in an amount sufficient to punish and deter the Defendants in the future from engaging in this form of malicious conduct; and award prejudgment interest from the earliest date allowable by law at the highest rate allowable by law;

      c. Costs and expenses to the extent allowable by law.  *See* 42 U.S.C. § 1988;

      d. Further relief as this Court deems just and proper.

## Count 4: Violation of State Constitutional Rights under 5 M.R.S. § 4681 *et seq*, - as to Defendant Balcom and John Doe Defendants

143.   Plaintiff repeats and realleges each and every allegation made in paragraphs 1-142 as if set forth herein.

144.   Said conduct of Defendants caused the Plaintiff to suffer cruel and unusual punishment, denied her right to be free from unreasonable searches and seizures, denied her right to due process, denied her medical attention and other rights and privileges guaranteed under the Constitution of the State of Maine.

145.   Upon information and belief, Defendant Balcom and the John Doe Defendants agreed and acted in concern with each other to commit these acts.

146.   Defendants knew that their conduct violated Plaintiff's State Constitutional rights and were deliberately indifferent to that risk.

147.   The actions of Defendant Balcom and the John Doe Defendants are the direct and proximate cause of physical and psychological injuries suffered by Plaintiff LaVerdiere.

WHEREFORE the Plaintiff prays that this Honorable Court grant judgment in favor of the Plaintiff and against the Defendants and award the Plaintiff the following relief:

a.   An amount of damages deemed reasonable by the trier of fact sufficient to compensate Plaintiff;

b.   Punitive Damages in an amount sufficient to punish and deter the Defendants in the future from engaging in this form of malicious conduct; and award prejudgment interest from the earliest date allowable by law at the highest rate allowable by law;

c.   Costs and expenses to the extent allowable by law.

d.   Further relief as this Court deems just and proper.

**Count 5: Violation of State Constitutional Rights under 5 M.R.S. § 4681 *et seq* - as to Defendants Fitzpatrick, Landry, and Woolford**

148.   Plaintiff repeats and realleges each and every allegation made in paragraphs 1-147 as if set forth herein.

149.  Said conduct by Defendants Fitzpatrick, Landry, and Woolford caused the Plaintiff to suffer cruel and unusual punishment, denied her right to be free from unreasonable searches and seizures, denied her right to due process, denied her medical attention and other rights and privileges.

150.  Said conduct by the Defendants violated Plaintiff LaVerdiere's rights as guaranteed under the Constitution of the State of Maine.

151.  Defendants knew that their conduct violated Plaintiff's Constitutional rights and were deliberately indifferent to that risk.

152.  The actions of Defendants Fitzpatrick, Landry, and Woolford are the direct and proximate cause of physical and psychological injuries suffered by Plaintiff LaVerdiere.


WHEREFORE the Plaintiff prays that this Honorable Court grant judgment in favor of the Plaintiff and against the Defendants and award the Plaintiff the following relief:

     a.  An amount of damages deemed reasonable by the trier of fact sufficient to compensate Plaintiff;

     b.  Punitive Damages in an amount sufficient to punish and deter the Defendants in the future from engaging in this form of malicious conduct; and award prejudgment interest from the earliest date allowable by law at the highest rate allowable by law;

     c.  Costs and expenses to the extent allowable by law.

     d.  Further relief as this Court deems just and proper.

## Count 6:  Assault - as to Defendant Balcom and John Doe Defendants

153.   The Plaintiff repeats and realleges each and every allegation made in paragraphs 1-152 as if set forth herein.

154.   Defendant Balcom placed Plaintiff in fear of imminent bodily harm.

155.   Defendant Balcom attempted to, and did in fact, touch Plaintiff in an offensive manner.

156.   Defendant Balcom's actions were deliberate, unlawful, malicious, reckless, wanton, and made in bad faith.

157.   Defendant Balcom's conduct is the direct and proximate cause of physical and psychological injuries suffered by Plaintiff LaVerdiere.

158.   Upon information and belief, John Doe Defendants acted in concert with Defendant Balcom pursuant to a common plan or design and rendered substantial assistance to Defendant Balcom in the commission of his assaults.

WHEREFORE the Plaintiff prays that this Honorable Court grant judgment in favor of the Plaintiff and against the Defendants and award the Plaintiff the following relief:

     a. An amount of damages deemed reasonable by the trier of fact sufficient to compensate Plaintiff;

     b. Punitive Damages in an amount sufficient to punish and deter the Defendants in the future from engaging in this form of malicious

conduct; and award prejudgment interest from the earliest date allowable by law at the highest rate allowable by law;

c. Costs and expenses to the extent allowable by law.

d. Further relief as this Court deems just and proper.

## Count 7: Intentional Infliction of Emotional Distress - as to all Defendants

159.  Plaintiff repeats and realleges each and every allegation made in paragraphs 1-158 as if set forth herein.

160.  Defendants have intentionally or recklessly inflicted severe emotional distress or knew it was certain or substantially certain that such distress would result from their conduct.

161.  Defendant's conduct was so extreme and outrageous as to exceed the bounds of decency and must be regarded as atrocious an utterly intolerable in a civilized society.

162.  Defendant's conduct caused Plaintiff emotional distress that is so severe no reasonable person should be expected to endure it.

WHEREFORE the Plaintiff prays that this Honorable Court grant judgment in favor of the Plaintiff and against the Defendants and award the Plaintiff the following relief:

a. An amount of damages deemed reasonable by the trier of fact sufficient to compensate Plaintiff;

b. Punitive Damages in an amount sufficient to punish and deter the Defendants in the future from engaging in this form of malicious conduct; and award prejudgment interest from the earliest date allowable by law at the highest rate allowable by law;

c. Costs and expenses to the extent allowable by law.

d. Further relief as this Court deems just and proper.


**Count 8:**
**Punitive Damages - All Defendants**

163.  The Plaintiffs repeats and realleges each and every allegation made in paragraphs 1-162 as if set forth herein.

164. In committing the above alleged acts and omissions, the Defendants acted with express or implied malice sufficient to justify an award of punitive damages on claims under both Federal and State law.


WHEREFORE the Plaintiff prays that this Honorable Court grant judgment in favor of the Plaintiff and against the Defendants and award the Plaintiff the following relief:

a. An amount of damages deemed reasonable by the trier of fact sufficient to compensate Plaintiff;

b. Punitive Damages in an amount sufficient to punish and deter the Defendants in the future from engaging in this form of malicious conduct; and award prejudgment interest from the earliest date allowable by law at the highest rate allowable by law;

    c.  Costs and expenses to the extent allowable by law.

    d.  Further relief as this Court deems just and proper.


/s/  Scott F. Hess

Dated:      September 4, 2017

_____
Scott F. Hess, Esq., (Bar #4508)
The Law Office of Scott F. Hess, Esq.
Attorney for Plaintiff
72 Winthrop Street
Augusta, ME 04330
T|(207) 430-8079
F|(877) 782-2506
scott@hesslawme.com